FILED
APR - 4 2006
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY_____ Deputy Clerk

ENTERED
APR - 5 2006
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY_____ Deputy Clerk

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
### RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>INLAND GLOBAL MEDICAL GROUP, INC.,<br><br>　　　　　　Debtor.<br><br>RICHARD K. DIAMOND, CHAPTER 7 TRUSTEE,<br>　　　　　　Plaintiff,<br>v.<br><br>THE GEMMEL PHARMACY GROUP, INC., ET. AL.,<br>　　　　　　Defendants. | Case No. RS 02-26263 PC<br><br>Chapter 7<br><br>Adv. No. RS 04-02251 PC<br><br>**MEMORANDUM DECISION**<br><br>Date: March 21, 2006<br>Time: 9:00 a.m.<br>Place: U.S. Bankruptcy Court<br>　　　Courtroom 303<br>　　　3420 Twelfth Street<br>　　　Riverside, CA 92501 |

Plaintiff, Richard K. Diamond, Chapter 7 Trustee ("Diamond") seeks to avoid certain alleged preferential transfers totaling $17,289.89 pursuant to 11 U.S.C. § 547(b). Defendant, The Gemmel Pharmacy Group, Inc., et. al., ("Gemmel") assert affirmative defenses to Diamond's preference claim under 11 U.S.C. §§ 547(c)(2) and (4). The court conducted a trial in this adversary proceeding on March 21, 2006, at which Sandor T. Boxer appeared for Diamond and Stephen R. Wade appeared for Gemmel. At the conclusion of trial, the matter was taken under submission. Having considered the pleadings, evidentiary record,[1] trial briefs and arguments of counsel, the court makes

---

[1] Having considered the Supplemental Declaration of Barry Vantiger in Lieu of Direct Testimony at Trial and Plaintiff's Supplemental Statement in Response To Supplemental Declaration of Barry Vantiger in Lieu of Direct Testimony at Trial, the court overrules Diamond's objections to Gemmel's Exhibits A-1 through A-10 and sustains Diamond's objection to Gemmel's Exhibit B. Exhibits A-1 through A-10 are admitted into evidence and Exhibit B is excluded.

**ORIGINAL**

the following findings of fact and conclusions of law[2] pursuant to Fed. R. Civ. P. 52, as incorporated into Fed. R. Bankr. P. 7052.

## I. STATEMENT OF FACTS

On October 4, 2002, an involuntary chapter 7 petition was filed against <u>Inland Global Medical Group, Inc.</u> ("Inland Global"), in Case No. RS 02-26263 PC in the United States Bankruptcy Court, Central District of California, Riverside Division. An order for relief under chapter 7 was entered in the case on December 27, 2002. Diamond is the duly elected chapter 7 trustee of the bankruptcy estate of Inland Global, and has standing to pursue the causes of action alleged in the complaint filed in this adversary proceeding on behalf of such estate. At all relevant times, Gemmel was a Delaware corporation doing business in the state of California.

On or about July 8, 2002, Inland Global wrote Check # 70194 in the amount of $17,289.89, payable to Gemmel dated July 8, 2002. The check was paid or honored on July 16, 2002. Neither Diamond nor Gemmel dispute that the check was a "transfer" of funds belonging to Inland Global within the meaning of the Bankruptcy Code and other applicable laws. Nor do the parties dispute that (a) the subject transfer was made for or on account of an antecedent debt owed by Inland Global to Gemmel before such transfer was made; (b) the subject transfer was made within 90 days before October 4, 2002 - the date the involuntary petition was filed against Inland Global, and (c) the subject transfer enabled Gemmel to receive more than it would have received if the case were a case under chapter 7, the subject transfer had not been made, and Gemmel had received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

---

[2] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent that any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.

1  In support of its affirmative defenses, Gemmel's vice president, Barry Vantiger ("Vantiger"), who is responsible for Gemmel's billing and accounts receivable, testified that Gemmel rendered medical services to Inland Global patients on a "fee for service" basis through 2002 pursuant to a written agreement entered into between the parties in 2001. A copy of the agreement was not introduced into evidence. Vantiger testified that he was unable after due diligence to locate a copy of the agreement. According to Vantiger, Gemmel rendered medical services for the benefit of Inland Global patients on a "fee for service" basis from July 16, 2002 to October 4, 2002, pursuant to its agreement with Inland Global, as evidenced by Exhibits A-1 through A-10. Inland Global was billed the sum of $8,812.88 for such services, and Gemmel "never received compensation for these services from Inland Global or any other person."

## II. DISCUSSION

The court finds that it has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b), and venue is appropriate in this court under 28 U.S.C. § 1409(a). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F) and (O).

**A.    Contentions of the Parties.**

The parties do not dispute that the subject transfer constitutes a preferential transfer by Inland Global to Gemmel of $17,289.89 pursuant to § 547(b). Plaintiff claims that he is entitled to recover the sum of $17,289.89 from Gemmel pursuant to § 547(b), together with prejudgment interest and costs of court. Gemmel claims that it provided services on behalf of Inland Global after the subject transfer which constituted "new value" under § 547(c)(4) in the amount of $8,812.88, and that such new value provides a partial defense to Diamond's preference claim. Additionally, Gemmel claims an affirmative defense under § 547(c)(2), arguing that the transfer was in payment of a debt incurred by the debtor in the ordinary course of business, made in the ordinary

1 course of business, and according to ordinary business terms.

2 **B.    New Value**.

3     Section 547(c)(4) states that the trustee may not avoid under § 547 a transfer to
4 or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave
5 new value to or for the benefit of the debtor –

6     (A) not secured by an otherwise unavoidable security interest; and

7     (B) on account of which new value the debtor did not make an otherwise
8     unavoidable transfer to or for the benefit of such creditor.

9 11 U.S.C. § 547(c)(4). To prevail with the new value defense, Gemmel must show (a)
10 that it gave unsecured new value to or for the benefit of the debtor; (b) after the
11 preferential transfer; and (c) the debtor did not repay the new value by an otherwise
12 unavoidable transfer. Mosier v. Ever-Fresh Food Co. (In re IRFM, Inc.), 52 F.3d 228,
13 231 (9th Cir. 1995). "The 'new value' defense is grounded in the principle that the
14 transfer of new value to the debtor will offset the payments, and the debtor's estate will
15 not be depleted to the detriment of other creditors." Rodgers v. Schneider (In re Laguna
16 Beach Motors, Inc.), 148 B.R. 322, 324 (9th Cir. BAP 1992), quoting In re Auto-Train
17 Corp., 49 B.R. 605, 612 (D.D.C. 1985), aff'd sub nom., Drabkin v. A.I. Credit Corp., 800
18 F.2d 1153 (D.C. Cir. 1986).

19     In this case, Vantiger testified that after receiving Check # 70194, Gemmel
20 continued to provide medical services to Inland Global patients on a "fee for service"
21 basis pursuant to its agreement with Inland Global. The invoices admitted as Exhibits
22 A-1 through A-10 show that Gemmel's services were rendered to two Inland Global
23 patients, Robert Davidson and Gloria Lewis, between July 23, 2002 and September 30,
24 2002. Exhibits A-1 through A-10 identify the (a) name and patient number of the Inland
25 Global patient receiving the service; (b) medical record number; (c) date of service; (d)
26 nature of service performed; (e) payer and provider number; (f) a treatment

27

1  authorization code, and (g) the total charge for the service. Vantiger testified that
2  Gemmel did not receive compensation for the services described in Exhibits A-1
3  through A-10 from Inland Global or any other person.
4      The defendant in a preferential transfer proceeding has the burden of proving
5  any exceptions to avoidance under § 547(c). 11 U.S.C. § 547(g). See Marshack v.
6  Orange Commercial Credit (In re Nat'l Lumber & Supply, Inc.), 184 B.R. 74, 75 (9th Cir.
7  BAP 1995). With respect to § 547(c)(4), creditors have the burden of establishing with
8  specificity the measure of new value given to the debtor in the exchange. See, e.g.,
9  Official Unsecured Creditors' Comm. v. Airport Aviation Servs., Inc. (In re Arrow Air,
10 Inc.), 940 F.2d 1463, 1466 (11th Cir. 1991); Creditors' Comm. v. Spada (In re Spada),
11 903 F.2d 971, 976 (3rd Cir. 1990); Jet Florida, Inc. v. Am. Airlines, Inc. (In re Jet Florida
12 Sys., Inc.), 861 F.2d 1555, 1559 (11th Cir. 1988). Creditors relying on § 547(c)(4) must
13 also prove that the new value has not been repaid by an otherwise unavoidable
14 transfer. See IRFM, 52 F.3d at 231; Nat'l Lumber, 184 B.R. at 81. Because Gemmel
15 has established with specificity new value given to Inland Global and that such new
16 value was not repaid by an otherwise unavoidable transfer, Gemmel is entitled to a new
17 value defense in the amount of $8,812.88 against Diamond's preference claim.
18 **C.    Ordinary Course of Business**.
19     Under § 547(c)(2), a trustee may not avoid an otherwise preferential transfer to
20 or for the benefit of a creditor to the extent that such transfer was –
21     (A) in payment of a debt incurred by the debtor in the ordinary course of business
22     or financial affairs of the debtor and the transferee;
23     (B) made in the ordinary course of business or financial affairs of the debtor and
24     the transferee, and
25     (C) made according to ordinary business terms.
26 11 U.S.C. § 547(c)(2). Section 547(c)(2) is comprised of a subjective test and an
27

1 | objective test. See Cocolat, Inc. v. Fisher Dev., Inc. (In re Cocolat, Inc.), 176 B.R. 540,
2 | 549 (Bankr. N.D. Cal. 1995). The transferee has the burden of proving the defense and
3 | must prove each of the three elements by a preponderance of the evidence. Arrow
4 | Elec., Inc. v. Justus (In re Kaypro), 230 B.R. 400, 404 (9th Cir. BAP 1999), aff'd in part,
5 | rev'd in part, 218 F.3d 1070 (9th Cir. 2000).
6 |         Sections 547(c)(2)(A) & (B), which together form the subjective test, require a
7 | creditor to demonstrate that the debt and its payment are ordinary in relation to past
8 | practices or a prior course of dealing between the debtor and the creditor. See, e.g.,
9 | Sulmeyer v. Suzuki (In re Grand Chevrolet, Inc.), 25 F.3d 728, 732 (9th Cir. 1994); Bell
10 | Flavors & Fragrances, Inc. v. Andrew (In re Loretto Winery, Ltd.), 107 B.R. 707, 709 (9th
11 | Cir. BAP 1989); Cocolat, 176 B.R. at 549.
12 |         Section 547(c)(2)(A) focuses on whether the incurrence of debt was ordinary,
13 | i.e., whether the debt was incurred by the debtor in the ordinary course of business.
14 | See Cocolat, 176 B.R. at 549. Section 547(c)(2)(B) requires the court to examine the
15 | following factors to determine if payment of the debt was ordinary in light of past
16 | practices between debtor and creditor: (1) the length of time the parties were engaged
17 | in the transactions at issue; (2) whether the amount or form of tender differed from past
18 | practices; (3) whether the debtor or creditor engaged in any unusual collection or
19 | payment activity; and (4) whether the creditor took advantage of the debtor's
20 | deteriorating financial condition. See Grand Chevrolet, 25 F.3d at 732; Cocolat, Inc.,
21 | 176 B.R. at 549.
22 |         Section 547(c)(2)(C)'s objective test requires a creditor to prove that the
23 | payment was ordinary in relation to prevailing business standards. See, e.g., Bank of
24 | the West v. Anderson (In re Jan Weilert RV, Inc.), 315 F.3d 1192, 1197 (9th Cir. 2003);
25 | In re Food Catering & Housing, Inc., 971 F.2d 396, 398 (9th Cir. 1992). In other words, §
26 | 547(c)(2)(C)'s objective standard requires proof of "practices common to businesses
27 |

1  similarly situated to the debtor and the transferee." Loretto Winery, 107 B.R. at 709. It
2  is not enough to prove what past practices were between the particular creditor and the
3  debtor. Id. The focus of the inquiry is whether the payment practice at issue comports
4  with industry standards.  See Jan Weilert, 315 F.3d at 1197. According to the Ninth
5  Circuit:

6      [T]he creditor must show that the payment he received was made in accordance
       with the ordinary business terms in the industry. But this does not mean that the
7      creditor must establish the existence of some single, uniform set of business
       terms . . . . We conclude that "ordinary business terms" refers to the range of
8      terms that encompasses the practices in which firms similar in some general way
       to the creditor in question engage, and that only dealings so idiosyncratic as to
9      fall outside that broad range should be deemed extraordinary and therefore
       outside the scope of [the ordinary course of business].
10
11 Id., quoting In re Tolona Pizza Prods. Corp., 3 F.3d 1029, 1033 (7th Cir. 1993). Section
12 547(c)(2)(C)'s objective test requires consideration of both the creditor's and the
13 debtor's industries, i.e., "the broad range of terms that encompasses the practices
14 employed by those debtors and creditors, including terms that are ordinary for those
15 under financial distress." Jan Weilert, 315 F.3d at 1198 (citations omitted).

16     In this case, Gemmel's ordinary course defense is based primarily upon the
17 following testimony from Vantiger:

18     Over the course of our contractual relationship, Inland Global was
       consistently late on payments. Inland Global ordinarily paid for services 120
19     days after they were rendered. Several other insurers and governmental aid
       programs also did not ordinarily keep their accounts current and late payments
20     on services rendered was a common practice. For example, during the same
       time period, Medicare, a federal medical aid program, had balances due in the
21     120-180 day categories. In addition, MediCal, the state medical aid program
       likewise had balances in the 120-180 day categories.

22 Viewing the evidence in a light most favorable to Gemmel, the court finds that Gemmel
23 failed to sustain its burden to establish that the transfer was made in the ordinary course
24 of business and made according to ordinary business terms.
25     With respect to § 547(c)(2)(B), Gemmel failed to submit any billing records or a
26 billing history concerning medical services rendered on behalf of Inland Global to show
27

-7-

the length of time the parties were engaged in the transactions and that the amount or form of tender did not differ from past practices.  Nor did Gemmel introduce evidence to establish that neither Inland Global nor Gemmel engaged in any unusual collection or payment activity.  Even assuming Gemmel satisfied the subjective test of § 547(c)(2)(A) & (B), there is little credible evidence that the payments were ordinary in relation to prevailing business standards.  The fact that two government aid programs were unable to keep their accounts current with Gemmel does not satisfy Gemmel's burden to establish that Inland Global's payments to Gemmel comported with industry standards.  Gemmel did not offer any expert testimony concerning the credit arrangements between other similarly situated debtors and creditors in the industry nor any expert opinion as to whether Inland Global's payment practices were consistent with what takes place in the industry.  See In re Hessco Indus., Inc., 295 B.R. 372, 376 (9th Cir. BAP 2003) (stating that Jan Weilert's considerable relaxation of the burden on preference defendants in proving their affirmative defenses under § 547(c)(2)(C) . . . [does] not relieve them of the requirement to proffer some evidence to sustain that burden").  Based on the foregoing, the court finds that Gemmel is not entitled to an ordinary course defense against Diamond's preference claim.

## CONCLUSION

For the foregoing reasons, the court will enter judgment awarding the sum of $8,477.01 to Diamond pursuant to § 547(b), together with prejudgment interest from December 22, 2004, to entry of judgment, and costs of court. A separate judgment will be entered consistent with this opinion.

DATED:

APR 0 4 2006

PETER H. CARROLL
United States Bankruptcy Judge

**NOTE TO USERS OF THIS FORM:**
*Physically attach this form as the last page of the proposed Order or Judgment.
Do **not** file this form as a separate document.*

| In re INLAND GLOBAL MEDICAL GROUP, INC., | CHAPTER 7 |
|---|---|
| Debtor. | CASE NUMBER RS 04-02251 PC |

## NOTICE OF ENTRY OF JUDGMENT OR ORDER
## AND CERTIFICATE OF MAILING

TO ALL PARTIES IN INTEREST ON THE ATTACHED SERVICE LIST:

1. You are hereby notified, pursuant to Local Bankruptcy Rule 9021-1(a)(1)(E), that a judgment or order entitled *(specify)*: MEMORANDUM DECISION

    was entered on *(specify date)*:   APR 0 5 2006

2. I hereby certify that I mailed a copy of this notice and a true copy of the order or judgment to the persons and entities on the attached service list on *(specify date)*: APR 0 5 2006

Dated:   APR 0 5 2006

JON D. CERETTO
Clerk of the Bankruptcy Court

By: C. Jeanmarie
Deputy Clerk

Service List

Sandor T. Boxer, Esq.
Law Offices of Sandor T. Boxer
12400 Wilshire Blvd., Suite 1300
Los Angeles, CA 90025-1030


Stephen R. Wade, Esq.
Law Offices of Stephen R. Wade
400 N. Mountain Avenue, Suite 214B
Upland, CA 91786